**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**JAMES GARRETT**, *et al.*, *on behalf of themselves and all others similarly situated*,

    *Plaintiff*,

    v.

**SUBARU OF AMERICA, INC.**,

    *Defendant*.

---

No. 23-cv-20971

**OPINION**

<u>**APPEARANCES:**</u>

**Lisa J. Rodriguez**
Dilworth Paxson LLP
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002

    *On behalf of Plaintiffs.*

**Homer B. Ramsey**
Shook, Hardy & Bacon LLP
1 Rockefeller Plaza, Floor 28
New York, NY 10020

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

### INTRODUCTION

This class action matter comes before the Court on the Motion for Leave to File a Third Amended Complaint ("Motion") filed by James Garrett ("Garrett"), Christopher Roach ("Roach"), Demaris Martz and Marcum Martz (jointly, the "Martzes"), Kimberly Rohrberg ("Rohrberg"), Robert Donnelly ("Donnelly"), and Taylor Paddock ("Paddock") (collectively, "Plaintiffs"). (ECF No. 69). Defendant Subaru of America, Inc. ("Subaru") has opposed the Motion. (ECF No. 71). The Court heard oral argument on February 25, 2026.

For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART. It is denied as to the express warranty claims and granted as to the non-express warranty claims. Accordingly, the Magnuson-Moss Warranty Act ("MMWA") and unjust enrichment claims in Counts 1 and 2 of the proposed Third Amended Complaint ("Proposed TAC"), (ECF No. 69-4), to the extent they are premised on breach of the Extended Warranties, and the state-law express warranty claims in Counts 4 (Michigan), 11 (Washington), and 14 (Florida) of the Proposed TAC, remain dismissed without prejudice pursuant to the Court's prior ruling on Subaru's Motion to Dismiss the Second Amended Complaint, (ECF Nos. 65–66). Plaintiffs shall file a Third Amended Complaint limited to the following claims, (ECF No. 69-4): (1) the MMWA and unjust enrichment claims in Counts 1 and 2 of the Proposed TAC, insofar as they are premised on implied warranties; (2) the state consumer protection claims in Counts 6 (New York), 8 and 9 (California), 10 (Washington), and 13 (Florida) of the Proposed TAC; and (3) the state-law implied warranty claims in Counts 5 (Michigan), 7 (New York), 12 (Washington), and 15 (Florida) of the Proposed TAC.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On April 28, 2025, the Court issued an oral ruling granting Subaru's motion to dismiss Plaintiffs' Second Amended Complaint without prejudice. (ECF Nos. 65–66). The Court found Plaintiffs' claims to be prudentially unripe because "[n]ot a single plaintiff . . . has alleged that they availed themselves, or attempted to, of any of the extended warranties" and, even if they did, they further failed to allege that Subaru's warranty repairs "did not fully address the defect or that some reimbursement [Plaintiffs] sought was associated with the defect and was denied." (Tr., ECF No. 66 at 32). The Court reserved decision on all other arguments raised by Subaru in its motion as to why the Second Amended Complaint should be dismissed. (*See id.* at 36). Further, given the twice previously filed lengthy motions to dismiss, the Court also instructed Plaintiffs to file a motion for leave to amend and Proposed TAC pursuant to Fed. R. Civ. Proc. 15 and L. Civ. R. 15.1, (*see id.*), which is now presently before the Court.

As with its predecessor iterations, the Proposed TAC alleges that Subaru designed, marketed, and sold certain 2016–2019 model vehicles equipped with 3G-dependent telematics systems that became partially or wholly inoperable when third-party wireless carriers phased out 3G service beginning in 2022. (ECF No. 69-4 at 1–2 ¶ 1).[1] Plaintiffs contend that, as a result, various internet-enabled and safety-related features stopped functioning and that the vehicles' data communication modules ("DCM") continued attempting to connect to defunct networks, causing parasitic battery drain and repeated battery failures. (*Id.*). Plaintiffs further allege that Subaru knew for years that 3G technology would be decommissioned but continued installing and promoting these systems without adequate disclosure. (*Id.* at 36 ¶¶ 101–02, 56–57 ¶¶ 209–12). For these

---

[1] The Proposed TAC inadvertently renumbers the paragraph numbers beginning on page 42. For clarity, all citations to the proposed TAC will cite the page number followed by the corresponding paragraph number as indicated.

failures, Plaintiffs claim a variety of damages, such as being deprived of the benefit of their bargain, overpayment, diminution in value, cost of repairs and/or replacements, loss of functionality and/or use, and various incidental, consequential, and statutory damages. (*See, e.g.*, *id.* at 1–2 ¶ 2, 44 ¶ 132, 48 ¶ 156, 55 ¶ 203, 56–57 ¶¶ 212–213, 60–61 ¶¶ 233, 238–39, 71–72 ¶¶ 314–16).

At the time Plaintiffs bought their respective vehicles (collectively, the "Class Vehicles"), Subaru provided each of them with a New Vehicle Limited Warranty ("NVLW"). (*See id.* at 36 ¶¶ 104–05). The NVLW ostensibly covered the defects alleged in this suit, but for some may have expired at an earlier date or mileage than what the Class Vehicles now reflect. (*See id.* at 36–37 ¶¶ 104–06). After this action was filed, Subaru issued two distinct, but related warranty extensions to specifically address the telematics and associated battery drain defects ("Extended Warranties"). (*See id.* at 40 ¶ 124). Plaintiffs' claims in this action arise solely from the Extended Warranties, and not the NVLW, presumably because the NVLW may have expired by the time Plaintiffs brought this suit, and they do not otherwise claim damages arising from breach of the NVLW. (*See id.* at 37 ¶ 106 n.8).

Both of the Extended Warranties are aimed at remedying the very defects underlying this litigation. The first applies to 2019 Legacy, 2019 Outback, and 2019–2021 WRX Subaru vehicle models. (*Id.* at 40 ¶ 126). This warranty extends each vehicle owner's NVLW to eight years or 150,000 miles, whichever comes first, but otherwise covers "[all] affected vehicles, regardless of mileage or [NVLW] Start Date" for one year. (*Id.* at 40 ¶ 127). It offers "(1) the installation of bypass boxes for vehicles that are not subscribed to Starlink telematics; or (2) the replacement of the DCM for vehicles with an active Starlink subscription." (*Id.* 40 ¶ 126). This warranty covers

the vehicles of Garrett, Roach, Rohrberg, Paddock, and Juan Fuentes ("Fuentes").[2] (*See id.* at 2–5 ¶¶ 3, 5, 9, 11, 15).

The second of the Extended Warranties applies to 2016–2018 Outback, Impreza, Legacy, Crosstrek, and Forester Subaru vehicle models, as well as 2017–2018 WRX models. (*Id.* at 42 ¶ 119). This warranty extends the vehicle owner's NVLW to eight years or 100,000 miles, whichever comes first, and also covers all affected vehicles for one year, regardless of the NVLW start date or mileage. (*Id.* at 42 ¶ 121). It "covers the costs of a DCM update to address the parasitic battery draw and the cost of replacing [] the battery if [Subaru] or its agents determine that the DCM was the root cause of the dead battery." (*Id.* at 42 ¶ 120). This warranty covers the Martzes and Donnelly's vehicles. (*See id.* at 4–5 ¶¶ 7, 13).

The Proposed TAC alleges that Roach, the Martzes, Rohrberg and Garrett all received Subaru's notice of the Extended Warranties applicable to their respective vehicles, while Donnelly, Paddock, and Fuentes did not. (*Id.* at 41 ¶ 134, 42 ¶ 123). Yet only Garrett and Roach took their vehicles in for repairs or requested reimbursement pursuant to the Extended Warranties. (*Id.* at 42–43 ¶¶ 124–25). Plaintiffs do not allege these repairs failed to cure the claimed defects or were ineffective in any way. Roach also "sought and received reimbursement for the cost of replacing his vehicle's DCM," prior to the Extended Warranties and although "Garrett previously incurred costs related to the defective telematics system," the Proposed TAC is silent as to whether he sought and was denied reimbursement for those costs pursuant to the Extended Warranties. (*See id.*). Nevertheless, Plaintiffs allege that the remedies offered by the Extended Warranties are inadequate. (*See id.* at 41 ¶¶ 130–32).

---

[2] Fuentes is a newly added plaintiff to the Proposed TAC.

Based on these allegations, Plaintiffs assert the following claims against Subaru in the Proposed TAC: violation of the MMWA, 15 U.S.C. § 2310(d)(1)(A), on behalf of a nationwide class (Count 1); unjust enrichment on behalf of a nationwide class (Count 2); breach of express warranty under Michigan law on behalf of the Michigan subclass (Count 4);[3] breach of the implied warranty of merchantability under Michigan law on behalf of the Michigan subclass (Count 5); violation of the New York Deceptive Practices Act, N.Y. GEN. BUS. LAW § 349, on behalf of the New York subclass (Count 6); breach of the implied warranty of merchantability under New York law on behalf of the New York subclass (Count 7); violation of the California Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq.*, on behalf of the California subclass (Count 8); violation of the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, on behalf of the California subclass (Count 9); violation of the Washington Consumer Protection Act, WASH. REV. CODE §§ 19.86.020 *et seq.*, on behalf of the Washington subclass (Count 10); breach of express warranty under Washington law on behalf of the Washington subclass (Count 11); breach of the implied warranty of merchantability under Washington law on behalf of the Washington subclass (Count 12); violation of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201 *et seq.*, on behalf of the Florida subclass (Count 13); breach of express warranty under Florida law on behalf of the Florida subclass (Count 14); and breach of the implied warranty of merchantability under Florida law on behalf of the Florida subclass (Count 15).

## II.    LEGAL STANDARD

A party may amend its pleadings with the opposing party's consent or the court's leave, and "[t]he court should freely give leave when justice so requires." FED R. CIV. P. 15(a)(2). Leave to amend may be denied where there is undue delay, bad faith, undue prejudice, or futility. *Foman*

---

[3] The Proposed TAC omits a "Count 3," so the Court will reiterate the Counts as numbered therein for consistency.

*v. Davis*, 371 U.S. 178, 182 (1962). The burden typically falls on the opposing party to show why amendment should be denied. *Luppino v. Mercedes–Benz USA, LLC*, No. 09-5582, 2012 WL 850743, at *2 (D.N.J. Mar. 8, 2012).

"Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (quotations and citations omitted). In assessing futility, the Court applies the Rule 12(b)(6) standard—accepting all well-pleaded allegations as true and viewing them in the light most favorable to the movant. *Id.* An amendment is futile only if it would fail to state a claim or is clearly frivolous. *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). Where futility is not clear, leave to amend should not be denied. *Id.* at 468.

## III.    DISCUSSION

Subaru does not meaningfully contest that Plaintiffs' proposed amendment constitutes undue delay or is made in bad faith. Considering the liberality afforded to Plaintiffs in amending pleadings early in this litigation, the Court's analysis will therefore focus on whether filing of the Proposed TAC would be futile, and whether undue prejudice would ensue.

For the following reasons, leave to amend is denied as to the claims premised upon breach of any express warranty. Those claims—Proposed TAC Counts 1 and 2, in part, and Counts 4, 11, and 14 entirely—remain dismissed without prejudice because amendment is futile. However, the Court will grant leave to amend as to the remaining claims because Subaru has not shown that these claims are "legally insufficient on [their] face" such that amendment is "clearly futile." *Harrison Beverage*, 133 F.R.D. at 468–69 (quotations omitted).

A. **Amendment Would Be Futile as to Plaintiffs' Express Warranty Claims, But Not as to Their Non-Express Warranty Claims.**

At oral argument on Subaru's prior motion to dismiss, the Court focused on "the threshold issue" of prudential ripeness. (Tr., ECF No. 66 at 31–32). The Court thereafter dismissed the Second Amended Complaint on this ground, (*see* Order, ECF No. 65), because Plaintiffs did not allege that they availed themselves, or attempted to, of the Extended Warranties and, even if they did, they made no allegations that Subaru's warranty repairs or reimbursements were inadequate. (Tr., ECF No. 66 at 35).

The Proposed TAC does not cure this deficiency. Plaintiffs' express warranty claims therefore remain unripe, and amendment would be futile as to those claims. However, the Court is not persuaded at this stage that amendment of the non-express warranty claims would be futile on ripeness grounds.

Ripeness, like standing, is a threshold justiciability doctrine, though the two inquiries are distinct: standing concerns *who* may sue, whereas ripeness concerns *when* suit may be brought. *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996); *Pa. Fam. Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007). The ripeness doctrine is specifically intended to prevent courts from entangling themselves in abstract or premature disputes. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated by, Califano v. Sanders*, 430 U.S. 99 (1977).

Ripeness is rooted in both Article III's case-or-controversy requirement and prudential considerations. *See Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 n.12 (3d Cir. 1992). The constitutional component is jurisdictional and asks whether there is a sufficiently concrete and immediate dispute to satisfy Article III. *See Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003) ("Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the

8

judiciary."). The prudential component reflects judicial discretion and asks whether the matter would be "*better* decided later . . . ." *Id.* (emphasis added). In either case, courts evaluate ripeness by considering "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. An action is fit for judicial review where further factual development would not "significantly advance [a court's] ability to deal with the legal issues presented," and the court is in no better position to adjudicate the dispute in the future. *Nat'l Park Hospitality,* 538 U.S. at 812 (quotations omitted).

Here, the express warranty claims remain unfit for judicial review. To begin with, the Proposed TAC does not cure the deficiencies previously identified by the Court in ruling on Subaru's prior Motion to Dismiss. Yet again, Plaintiffs do not allege that any of them availed themselves, or attempted to, of the Extended Warranties and, even if they did, there are no allegations that Subaru's warranty repairs or reimbursements were inadequate. The most that is alleged is that Garrett and Roach took their vehicles in for repairs covered under the Extended Warranties. (*Id.* at 42–43 ¶¶ 124–25). But both Garrett and Roach's repairs were successful; indeed, it is further alleged that Roach "sought and received reimbursement for the cost of replacing his vehicle's DCM." (*Id.*). Although "Garrett previously incurred costs related to the defective telematics system," it is not alleged whether he sought and was denied reimbursement for those costs. (*See id.*). In any event, there are no allegations that either Garrett or Roach's vehicles remain defective after the repairs under the Extended Warranties, or that reimbursement requests pursuant thereto were otherwise denied.

These failures render Plaintiffs' express warranty claims not prudentially ripe because breach of an express warranty plainly requires that the warranty's beneficiary invoke its provisions. *See Lowe v. Volkswagen of Am., Inc.*, 879 F. Supp. 28, 29–30 (E.D. Pa. 1995) ("The cause of action

for breach of the express warranty accrued when the breach was, or should have been discovered."); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-03095, 2021 WL 1207791, at *14 (D.N.J. Mar. 31, 2021) (finding no breach of an express warranty where "Plaintiffs have not alleged that the repair services offered under the Limited Warranty failed to cure these Plaintiffs' mechanical issues."); *Demorato v. Carver Boat Corps.*, No. 06-240, 2007 WL 1456207, at *5 (D.N.J. May 16, 2007) ("In order to prevail on their breach of express warranty claim, Plaintiffs must establish that [warrantor] failed to perform its obligation to 'repair or replace' a warranted defect"), *aff'd* 304 F. App'x 100 (3d Cir. 2008); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 520 (D.N.J. 2008) ("[I]f the repair is sought outside the warranty period, it is not covered by the express warranty.").

And critically, without alleging a breach, Plaintiffs cannot plausibly allege injury in fact. *See Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (finding that ripeness centers on whether an injury has occurred); *see also Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (citations omitted) (noting that injury in fact must be alleged as "not conjectural or hypothetical"). Many Plaintiffs do not allege that they invoked the warranty at all, so it is hardly plausible that they have damages from any breach thereof. And for the subset of Plaintiffs that have invoked the Extended Warranties—Garrett and Roach—they do not allege injury specifically attributable to its breach, such as ineffective repairs, additional unrepaired battery failures, or a refusal to reimburse expenses purportedly covered by the warranty. The lack of such allegations leads the Court to the conclusion that the repairs under the Extended Warranties were effective. Put differently, Plaintiffs' express warranty claims have not yet accrued without a breach by Subaru, and thus any injury in fact flowing from this hypothetical breach is entirely hypothetical itself. *See Strizheus v. City of Sioux Falls, S. Dakota*, 664 F. Supp. 3d 937, 954 (D.S.D.

10

2023) ("A related question to ripeness is when a claim accrues.") (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (stating that one of the aspects of claim accrual is when an injury occurred)). The Proposed TAC therefore is devoid of well-pleaded allegations establishing injury in fact related to the breach of the Extended Warranties.

Plaintiffs nevertheless argue that their "claims are ripe whether or not they availed themselves of the warranty extensions." [4] (Pl.'s Br., ECF No. 69-1 at 11). In doing so, Plaintiffs rely again on *Sowa v. Mercedes-Benz Group AG*, 764 F. Supp. 3d 1233, 1245 (N.D. Ga. 2024) and *In re Honda Idle Stop Litigation*, 694 F. Supp. 3d 1293 (C.D. Cal. 2023), and thus essentially ask the Court to revisit its prior ruling. While those cases are factually similar to the one at bar, the Court remains unpersuaded by them. *Sowa* held that express and non-express warranty claims were ripe notwithstanding the plaintiffs' failure to invoke an extended warranty because plaintiffs alleged present economic injuries—including overpayment and out-of-pocket losses—not fully covered by the extended warranty. 764 F. Supp. 3d at 1254–55. Similarly in *Honda Idle Stop*, that court found plaintiffs' "breach of implied warranty, unjust enrichment, fraud, and state consumer

---

[4] Plaintiffs' subsidiary points do not meaningfully advance the Court's consideration of whether their claims are prudentially ripe. (*See* Pls.' Br., ECF No. 69-1 at 14–19). First, the Court fails to see how Subaru opting to issue the Extended Warranties, rather than a recall, affects ripeness. Next Plaintiffs note that some Plaintiffs purportedly did not receive notice of the Extended Warranty, but they do not explain how that allegation cures the failure to plead that any Plaintiff invoked the warranty and was denied coverage. In any event, the Extended Warranties were issued after this litigation commenced and appear to have remained in effect for at least some of the Plaintiffs, undercutting any suggestion that lack of notice renders the claims presently justiciable. Finally, the Court rejects Plaintiffs' assertion that dismissal of their express warranty claims creates a "bad precedent" and policy because it would permit manufacturers to defeat claims by issuing extended warranties once litigation is commenced. But the opposite is equally true— allowing such claims to proceed and ignoring the fact that such warranties were issued and Plaintiffs failed to avail themselves of them would disincentivize manufacturers from issuing extended warranties. In short, the Court's ruling simply applies settled ripeness and pleading standards to the claims as alleged.

protection claims" constitutionally ripe[5] because the plaintiffs alleged a concrete and present injury in that their vehicles had already stalled unexpectedly, that they had been deprived of the benefit of their bargain for years, and that existing software updates and repair efforts had not resolved the defect. 694 F. Supp. 3d at 1298, 1302.

However, neither *Sowa* nor *Honda Idle Stop* address whether the injury in fact flowing from the express warranty claim is *plausibly* alleged. *Sowa* nearly gets there, but nevertheless finds the express warranty claims ripe because "[d]etermining whether Plaintiffs were required to seek repairs or reimbursement under the warranties requires an examination of the merits of Plaintiffs' express warranty claims" which the Court found was inappropriate on a motion to dismiss. 764 F. Supp. 3d at 1255. On this point though, the Court respectfully disagrees. The "[i]njury-in-fact element is not Mount Everest," *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014), but it requires more than conjecture, *e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). And here, Plaintiffs' alleged injuries flowing from the alleged breach of the Extended Warranties cannot possibly lie where no plausible breach is alleged.

Further, it is not the case here, as it was in *Sowa*, that Plaintiffs allege that their claimed defects are not covered by the Extended Warranties. (*See* ECF No. 69-4 at 70 ¶ 309 ("[Subaru's] attempted repairs illustrate a course of performance consistent with either the existence, or modification, of an express warranty *that covers the defective telematics system*." (emphasis added))).

---

[5] Plaintiffs overlook *Honda Idle Stop*'s conclusion that "the doctrine of prudential ripeness does not apply to private contractual disputes," which would include breach of warranty claims. 694 F. Supp. 3d at 1300–01 (citing *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005)). It is unclear whether Courts have accepted that proposition outside of the Ninth Circuit. Even so, the Court considers *Honda Idle Stop*'s discussion of constitutional ripeness to the extent it bears on the issues presented here.

Moreover, to the extent Plaintiffs rely on diminution in value or similar theories advanced elsewhere in the Proposed TAC, those injuries do not substitute for breach of express warranty damages because the measure and theory of harm in such cases is distinct. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.").

At bottom, the alleged injury deriving from Plaintiffs' breach of the Extended Warranties would benefit from necessary and identifiable factual development, such that the Court remains inclined to exercise its discretion to find that these claims remain prudentially unripe.

But the same is not the case with respect to Plaintiffs' remaining claims for, *inter alia*, unjust enrichment, breach of the implied warranty of merchantability, and statutory consumer fraud. The critical distinction with these claims is that Plaintiffs' alleged injury in fact originates from the time they were sold their respective Class Vehicles. (*See* Proposed TAC, ECF No. 69-4 at 64 ¶ 253 (alleging a violation of California's Unfair Competition Law where Subaru "concealed" information "for the purpose of inducing Plaintiffs . . . to purchase the Class Vehicles"), 74 ¶ 332 (same as to Florida's Deceptive and Unfair Trade Practices Act)); *see generally Jodway v. Kennametal, Inc.*, 525 N.W.2d 883, 889 (Mich. Ct. App. 1994) (noting that the implied warranty of merchantability "arises, if at all, at the time the product is sold to the purchaser."); *Husky Indus., Inc. v. Black*, 434 So. 2d 988, 990 n.3 (Fla. Dist. Ct. App. 1983) ("[L]iability for a breach of implied warranty of merchantability must be based on proof that the product was not merchantable at the time of sale, that is, the product was defective."). The injury Plaintiffs allege from these violations all plausibly flow from conduct that has already occurred and thus is not hypothetical or conjectural, and thus requires the Court to make no guess as to whether injury or breach in fact has arisen.

Subaru nevertheless maintains that these non-express warranty claims remain unripe. Relying on their past briefing, they argue that several other courts have found the same in analogous circumstances.[6] (*See* Def.'s Br., ECF No. 51-1 at 8–9 (citing *Elkins v. Am. Honda Motor Co.*, No. 19-00818, 2020 WL 4882412 (C.D. Cal. July 20, 2020); *Guan v. Mercedes-Benz USA, LLC*, No. 20-05719, 2022 WL 17089817 (N.D. Cal. May 17, 2022); *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833 (C.D. Cal. 2024)).[7] But none of these cases offer a particularly persuasive analysis of the position Subaru now advances. *Elkins* does not make a meaningful distinction between the plaintiffs' express warranty claims and those unrelated to any express warranty. *See* 2020 WL 4882412, at *5. And *Gonzalez* and *Guan*, while perhaps providing some deeper analysis, still are not on point. In *Gonzalez*, the court dismissed fraud, implied warranty, and state consumer protection claims arising from an alleged "Infotainment Defect." 720 F. Supp. 3d at 838, 42. Although the complaint did not assert a separate express warranty claim, the court invoked its discretionary authority to dismiss the claims for being prudentially unripe because plaintiff failed to utilize Honda's offered warranty to cure the Infotainment Defect. *Id.* at 841–42. Similarly in *Guan*, no express warranty claim was alleged; the Plaintiffs instead asserted violations of the

---

[6] Subaru further contends that amendment would be futile as to all claims because the Court previously dismissed all claims based on Plaintiffs' failure to avail themselves of the Extended Warranties, and the Proposed TAC does not rectify Plaintiffs' pleading deficiencies. The Court acknowledges that its prior order dismissing the Second Amended Complaint could be read that way. (*See* ECF No. 65). But the dismissal rested on the Court's conclusion that Plaintiffs had not alleged "any damages apart from those that could be recovered under the extended warranties." (Tr., ECF No. 66 at 32). As explained above, the Court finds that the Proposed TAC now alleges such injury.

[7] The Court does not find Subaru's reliance on prudential *mootness* persuasive. (*See* Def.'s Br., ECF No. 51-1 at 25–26 (collecting cases, including *Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023))). Prudential mootness is a unique doctrine that concerns situations where "a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). That is not the case here.

MMWA, the implied warranty of merchantability, and various California consumer statutes. 2022 WL 17089817, at *1. The Plaintiffs asserted damages related to Mercedes-Benz's failure "to pay for incidental parts related to the covered repai[r]" and "diminished value." *Id.* at *4. Like *Gonzalez*, the court nonetheless exercised its discretion to dismiss the claims as prudentially unripe. *See id.* at *3–5.

Here though, unlike *Guan* and *Gonzalez*, Plaintiffs plausibly allege categories of damages independent of the "efficacy and legal sufficiency" of any recall or warranty remedy. *Gonzalez*, 720 F. Supp. 3d at 842 (quoting *Elkins*, 2020 WL 4882412, at *5). Most notably, through their fraud, implied warranty, and unjust enrichment claims, Plaintiffs plausibly allege that, had they known of the defects at the point of sale, they "would not have purchased the vehicle." (ECF No. 69-4 at 3–7 ¶¶ 4, 6, 8, 10, 12). Subaru's position, in essence, is that the warranty extension cures all of Plaintiffs' alleged damages. But that argument conflates jurisdiction with the merits. The relevant question in considering prudential ripeness is whether the asserted injury is too speculative to constitute injury in fact, not whether a proposed remedy extinguishes all of Plaintiffs' claimed damages. Because the alleged injury underlying the non-express warranty claims arises at the time of sale, the subsequent Extended Warranties have little relevance to whether those claims are fit for judicial review now or would be "better" resolved later. *Simmonds*, 326 F.3d at 357.

Accordingly, the Court declines, at this juncture, to exercise its discretion to deem the non-express warranty claims prudentially unripe. Those claims are not only fit for judicial review, but their dismissal—thereby eliminating this action in its entirety—would impose a concrete hardship on Plaintiffs. *Abbott Labs.*, 387 U.S. at 149. Subaru has not otherwise advanced a sufficiently persuasive factual or legal basis to compel a different conclusion and, at this stage, the Court cannot

find that Subaru has met its burden of demonstrating that amendment of the non-express warranty claims would be "clearly futile." *Harrison Beverage*, 133 F.R.D. at 468–69 (quotations omitted).

In sum, leave to amend is denied as to the express warranty claims and granted as to the non-express warranty claims. The Court will not again revisit the ripeness of the express warranty claims; those claims remain dismissed without prejudice. Subaru may, however, renew any ripeness arguments directed solely to the non-express warranty claims in supplemental briefing submitted in connection with any forthcoming motion to dismiss. If Subaru chooses to do so, it must provide factually similar precedent to support such arguments.

### B. The Proposed Amendment Does Not Unduly Prejudice Subaru.

"Undue prejudice is the touchstone for the denial of leave to amend." *Harrison Beverage*, 133 F.R.D. at 468 (cleaned up). In determining whether amendment of a pleading will cause undue prejudice, the Court must "focus on the hardship to the [non-moving party] if the amendment were permitted." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).

Subaru argues it will be prejudiced by Plaintiffs' amendment because the Proposed TAC exceeds the scope of prior leave, adds a new named plaintiff, and would require re-briefing its earlier motion to dismiss, which is an outcome the Court previously sought to avoid. (*See* Def.'s Br., ECF No. 71 at 15–17). The Court is not persuaded any of these constitutes sufficient prejudice to deny leave to amend.

While the Proposed TAC may extend beyond the originally permitted scope, the express-warranty-related allegations are intertwined with the remaining claims and are not so extraneous as to warrant denial of leave. Although Plaintiffs may not proceed on the express warranty claims, the existence and scope of any express warranty may ultimately bear on damages, such as failure

16

to mitigate damages, and their inclusion does not meaningfully prejudice Subaru. The only concrete prejudice alleged is the prospect of supplemental briefing. This, standing alone, is insufficient, particularly where no new causes of action are asserted, the newly added plaintiff (Fuentes) falls within a subclass already addressed in prior briefing, and the case remains at a relatively early stage.

That said, the Court is unlikely to permit Plaintiffs to further amend their pleading to cure the ripeness defects as to the express warranty claims. Plaintiffs have already had ample opportunity through three pleadings to identify a plaintiff who invoked the Extended Warranties and found the remedy inadequate. Any additional attempt to revive those claims in this action would undoubtedly prejudice Subaru, which has twice moved to dismiss on other grounds and awaits consideration of those substantive arguments. All told, Plaintiffs may be able to later pursue the express warranty claims in a separate action if and when they become ripe, but for now this case will proceed without them.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend, (ECF No. 69), is GRANTED in part and DENIED in part. Plaintiffs shall file a Third Amended Complaint that is consistent with this Opinion. Leave to amend is DENIED, however, as to Plaintiffs' express warranty claims. Those claims remain dismissed without prejudice pursuant to the Court's prior order. (*See* ECF No. 65–66).

**CHRISTINE P. O'HEARN**
**United States District Judge**

17